**In re MILLER.**

District Court, D. New Jersey.
Feb. 19, 1934.

William N. Cooper, of Trenton, N. J., for petitioner-trustee.

Nathan N. Schildkraut, of Trenton, N. J., for respondent-claimant.

FORMAN, District Judge.

The facts, briefly, are that the Ralston Scales Corporation sold to Charles Miller on July 29, 1932, a computing scale under a conditional sale contract for the sum of $140. The contract, reserving title in the Ralston Corporation, was accompanied by a promissory note, and was never filed in accordance with the New Jersey Uniform Conditional Sales Act, P. L. 1919, c. 210, p. 461 (Comp. St. Supp. N. J. § 182—87 et seq.).

On October 20, 1932, Charles Miller filed a voluntary petition in bankruptcy and was adjudicated. At that time he owed the sum of $110 for the scales and in the schedules, accompanying his petition, described the debt as follows:

"Conditional Sales Agreement for the following: Ralston Scales Corporation, Columbus, Ohio, $110.00."

On December 13, 1932, the Ralston Corporation petitioned for the reclamation of the property and the referee directed its return.

The pertinent provision of the New Jersey Act, section 5, supra (Comp. St. Supp. N. J. § 182—91), is as follows:

"5. Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale."

The finding of the referee is based upon a decision of this court in Re Golden Cruller & Doughnut Company, Inc. (1925) 6 F.(2d) 1015, 1016, wherein the court says, after reciting facts similar to the case at bar:

"Section 5 of the Uniform Conditional Sales Act, adopted by New Jersey in 1919 (P. L. p. 462 [Comp. St. Supp. N. J. § 182—91]), makes conditional sales contracts, although unrecorded, valid as against all persons except: 'Any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed.'

"It is not necessary to determine the scope of section 47a of the Bankruptcy Act (Comp. St. § 9631 [11 USCA § 75, subd. a]). There is a considerable body of authority to support the proposition that a trustee steps merely into the shoes of an existing creditor. See Live Stock State Bank v. Doyle, trustee (C. C. A.) 292 F. 465, and cases there cited; also Martin v. Commercial National Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441.

"The matter has not been passed upon by the Circuit Court of Appeals for the Third Circuit. The judges in this district have not, however, followed Judge Kenyon's admirable decision in the Eighth Circuit. The question, however, is not necessary to the disposition of this case. Assuming, but not deciding, that where there are no judgment creditors the trustee is in the same position as a creditor who has procured a lien by judgment, the trustee in this case acquired no rights before having actual notice of the conditional sales contract; the schedules in bankruptcy exploiting such sales contracts."

The relevant provision of section 47a (2) of the Bankruptcy Act, as amended by Act June 25, 1910, § 8, 11 USCA § 75 (a) (2), above referred to, is in this language:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

Both Remington and Collier, in their ex-

haustive works on Bankruptcy, have developed the evolution of the law upon this subject.

"Previous to 1910 there was a considerable conflict of opinion as to the rights of a trustee in bankruptcy in regard to property sold to the bankrupt upon a conditional sale contract which had not been filed or recorded as required by State law. Some courts held that title to the property passed to the trustee where the statute made unrecorded conditional sale contracts void as to judgment or execution creditors or purchasers in good faith, or void as to all creditors or purchasers in good faith, or void as to all persons except the parties thereto. Other courts held that the trustee had no better right than the bankrupt and therefore if an unrecorded contract of conditional sale was valid under a State law as against the vendee it was valid against his trustee in bankruptcy. The question finally reached the United States Supreme Court where it was held that if an unrecorded conditional sale contract was good as between the parties it was valid as against the trustee in bankruptcy of the conditional vendee; the adjudication of the vendee not operating as a lien upon the property in the hands of the trustee, as against the vendor. This rule was thereafter followed by the lower courts. In order to overcome the effect of the Supreme Court decision just mentioned Congress amended section 47 of the Bankruptcy Act as heretofore noted. This amendment made a vital change in the act. Instead of the trustee having no greater right as to unrecorded conditional sale contracts than the bankrupt would have had, he now has the 'rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings.' This means that a contract of conditional sale, void under the State law as against lien or judgment creditors of the purchaser unless recorded, is likewise void as against the trustee in bankruptcy of the purchaser in possession of the property, and without reference to whether he represents creditors who have in fact acquired liens by legal or equitable proceedings. The amendment did not give the trustee the status of an innocent purchaser and, therefore, where the State law makes unrecorded conditional sale contracts void only as to subsequent purchasers for value, pledgees, or mortgagees in good faith it does not make them void as to a trustee in bankruptcy. The conditional vendor's interest is in the nature of a lien, effectual as against the vendee's creditors, if the requirements prescribed by State statute, as to filing, recording or

other notice, have been fully met." Collier on Bankruptcy (13th Ed. 1923) vol. 2, § 67 (4), p. 1520. See, also, Remington on Bankruptcy, § 1567.

There are other decisions in this district which do not seem to be in harmony with the ruling of the court in the Golden Cruller & Doughnut Company Case, supra.

In the case of In re Capital City Cap Co. (D. C.) 251 F. 664, Judge Rellstab held:

"In Bailey v. Baker Ice Machine Co., 239 U. S. 268, 275, 36 S. Ct. 50, 60 L. Ed. 275, it was held that the status of the trustee as 'a creditor holding a lien by legal or equitable proceedings,' given by section 47a (2) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 557 [Comp. St. 1916, § 9631]), in so far as it referred to the property in the custody of the bankruptcy court, related back to the filing of the original petition in bankruptcy. This was reiterated in Martin, Jr., etc., v. Commercial National Bank of Macon, Georgia, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441. True, in neither of these cases would the result have been different (the recordation having been made before the filing of the petition in bankruptcy), if the trustee's status for such purpose had been fixed as of the date of adjudication. Nevertheless, the reasons given in the Ice Machine Company Case for holding the date of filing the petition as the time of cleavage are controlling. It is not the passing of the title to the bankrupt's property, under section 70a [11 USCA § 110, subd. a], but the passing of such property gremio legis for purposes of liquidation, which fixes the time when the trustee is regarded as having acquired the status of a lienholder under section 47.

"With the filing of the petition in bankruptcy, the rights of creditors and claimants to property then in the possession of the bankrupt are held in abeyance, to be determined as of that date, if adjudication follows. The New Jersey statute, which makes unrecorded agreements of the character under consideration 'absolutely void as against the judgment creditors not having notice thereof' (2 Comp. St. N. J. [1910] pp. 1561–1563, §§ 71–73), through section 47a (2) of the Bankruptcy Act, became operative on the property in the possession of the bankrupt at the time the petition was filed.

"The invoking of the Bankruptcy Act secured rights to the general creditors which, in the event of an adjudication, could not be avoided by any act of either Knowlton & Co. or the bankrupt subsequent to the filing of the original petition in bankruptcy. Ad-

judication having been obtained, the recording of the 'conditional sales agreement' after the filing of that petition, in legal effect, is the same as if a judgment had been previously recovered against the bankrupt and levy made on the property in question. This result works no legal hardship to Knowlton & Co. It was chargeable with knowledge that the policy of the law, as expressed in the federal and state statutes, was to subordinate undisclosed rights in property to the rights of creditors holding liens thereon by legal or equitable proceedings. It was within the power of Knowlton & Co. to record this agreement at any time after its execution and bring itself within that policy. It delayed doing so for more than eight months, and not until after the bankruptcy court had its grip upon property which, as far as appearances indicated, belonged to the bankrupt. The recording of this 'conditional sales agreement' came too late to save the rights reserved under it."

In the case of In re Press Printers & Publishers, Inc. (D. C.) 4 F.(2d) 159, Judge Runyon held:

"As a conditional sale agreement, the instrument further becomes subject to the provisions of the law regulating the filing thereof. In the first place, the petitioner seemingly recognized that its instrument was not a lease, despite its name, and recorded it as a chattel mortgage.

"Secondly, the act governing conditional sales provides that the agreement must in the first instance be filed within 10 days and refiled at the expiration of 3 years. The plaintiff omitted to carry either of these provisions into effect. Having failed properly to record its conditional sale agreement, I am of the opinion that the plaintiff has forfeited the preferential position which might otherwise have obtained, and that its instrument is void for any such purpose as against judgment creditors, and entitles it to no claim for the payment it asks. See Unitype Co. v. Long, 143 F. 315, 74 C. C. A. 453; In re A. E. Savage Baking Co. (D. C.) 259 F. 977; Groner v. Babcock Printing Press Mfg. Co. (C. C. A.) 267 F. 822."

In affirming the opinion of the court in the last mentioned case, Judge Woolley, of our Circuit, has this to say:

"Two questions arise; one under the recording acts of New Jersey (see title 'Conveyances,' 2 Comp. St. 1910, p. 1532) the other under the Bankruptcy Act (11 US CA). Courts of New Jersey have construed such acts strictly, holding, for instance, that as the statute declares a chattel mortgage void as to creditors of the mortgagor unless it be recorded according to its terms, a chattel mortgage is, in law, void as to such creditors unless it is, in fact, recorded as required. Knickerbocker Trust Co. v. Penn Cordage Co., 65 N. J. Eq. (20 Dick.) 181, 55 A. 231; Id., 66 N. J. Eq. (21 Dick.) 305, 58 A. 409, 105 Am. St. Rep. 640. It was by analogy with this ruling that the District Court affirmed the referee holding the unfiled conditional bill of sale in issue void. In this we are constrained to agree. But the claimant insists that, even if the contract was not filed as required, the filing act does not avoid the instrument as between the parties when, as here, there was no creditor who, before bankruptcy, actually obtained a lien on the chattel sold. That might be true had not bankruptcy of the buyer followed and had not its trustee intervened between seller and buyer. With the contract of conditional sale not yet filed in compliance with the requirements of the Conditional Sales Act, the trustee came in with the rights of a lien creditor having an execution returned unsatisfied and with the right to enforce his claim against the chattel without showing that any particular creditor had in fact obtained a judgment against the bankrupt. Bankruptcy Act, § 47a (2). Interstate Banking & Trust Co. v. Brown (C. C. A.) 235 F. 32. The trustee was clothed with this right by section 47a (2) of the Bankruptcy Act as amended by the act of 1910 (11 USCA § 75), the effect of which is to place the trustee, so far as his right to attack the validity of the instrument is concerned, in the same position as a creditor with a lien. For the purpose of attacking the conditional bill of sale, the trustee was a potential lien creditor. As the conditional bill of sale would, under the state law, be void against a lien creditor, it is likewise void against the trustee. In re O'Brien (D. C.) 215 F. 130." In re Press Printers & Publishers, Inc. (C. C. A.) 23 F.(2d) 34 at page 35.

In the case of In re Public Opinion Pub. Co. (D. C.) 20 F.(2d) 404, 405, the Ludlow Typograph Company sold a machine to the bankrupt under a conditional contract of sale which provided for the giving of notes to be secured by a chattel mortgage. The conditional bill of sale itself was never filed. Later the chattel mortgage was recorded as such. The vendee subsequently went into bankruptcy and the Ludlow Company sought to reclaim its machine. The referee denied its claim and directed that the trustee sell the property free of any lien of the Ludlow Com-

pany. Judge Runyon, in reviewing the action of the referee, holds:

"I may say at the outset that I concur in the conclusions reached by the referee, albeit for somewhat different reasons from those advanced by him in his memorandum of findings. The referee emphasizes the delay in the recording of the chattel mortgage, after its execution, occasioned through its being forwarded to Chicago for inspection and then returned, and opines that such delay, under the circumstances, is sufficient to effect a forfeiture of any preference which might otherwise have been obtained through such mortgage.

"If I read our Conditional Sales Act (P. L. N. J. 1919, p. 461) aright, the harm to the Ludlow Company's interests had already been accomplished through the failure to record or file the conditional sales agreement. The Ludlow Company had 10 days after the execution of the agreement within which to file it, and could thus have protected itself and its chattels against any such attack as is here made. But, having failed to take advantage of the filing provision of the act, the Ludlow Company surrendered any rights to be secured thereunder, and rendered itself subject to the provisions of section 5, which, in part, reads as follows:

" 'Every provision in a conditional sale reserving property in the seller shall be void as to any  *  *  *  creditor of the buyer, who, without notice of such provision,  *  *  *  acquires by attachment or levy a lien upon them, before the contract  *  *  *  shall be filed,  *  *  *  unless such contract or copy is so filed within ten days after the making of the conditional sale.'

"In other words, had there been judgment creditors of the Public Opinion Company, holding attachments or executions at the expiration of the period within which the conditional sales agreement should have been filed, the failure to file would have been tantamount to a surrender of the chattels to the operation of the law concerning attachments and executions. And while there were no attachments and executions outstanding at this· time, and the chattel mortgage covering the same chattels was afterwards executed and recorded, the later bankruptcy procedure nevertheless brought into being, first a receiver and then a trustee. And under Bankruptcy Act, § 47, as amended (Comp. St. § 9631 [11 USCA § 75]), the trustee, among his other powers, shall 'as to all property in the custody (of the court) be deemed vested with all the rights, remedies, and powers of a creditor holding a lien  *  *  *  thereon.'

"Consequently, and inasmuch as the trustee represents certain judgment creditors whose judgments were in existence at the time the chattel mortgage was executed, and brings to such representation the added powers conferred upon him by the Bankruptcy Act, as last above noted, I am of the opinion that the creditors are to be deemed as of two classes: First, those whose claims are not subject to the conditional sale because it never was filed and of the existence of which the trustee is in nowise proven to have had knowledge, nor to the lien of the chattel mortgage, because their judgments antedate its execution; and, secondly, those whose claims were and are subsequent to the execution and recording of the mortgage.

"In the case of In re Master Knitting Corporation, 7 F.(2d) 11, the Circuit Court of Appeals for the Second Circuit deals with a situation which in several features parallels the instant one. Judge Hough, speaking for the court, says in part:

" 'But the present Sales Act makes the sale absolute in favor of any creditor who 'acquires by attachment or levy a lien' before contract filed. And since a trustee under the Bankruptcy Act may 'as to all property in the custody (of the court) be deemed vested with all the rights, remedies and powers of a creditor holding a lien  *  *  *  thereon,' this trustee in bankruptcy falls exactly within the language of the state statute. In re Seward Dredging Company, 242 F. 225, 228, 155 C. C. A. 65.

" 'It remains, however, to inquire whether under the state act the trustee, although a creditor and having a lien as by attachment upon these chattels, is a creditor "without notice of such provision" for retention of title in the vendor. No evidence was offered below on this point.

" 'It is to be observed that, since the goods were in the custody of the court below and of the trustee, the vendor was in the position of a plaintiff. The very existence of bankruptcy proceedings produced a presumption of the strongest nature that there were creditors, and by every principle of procedure the burden of proof lay upon the man seeking reclamation to show that he came within the statutory provision of notice. We perceive no difference between one who demands property at the hands of the trustee in the way Benerofe did and any other petitioner in reclamation; it is his duty to bear the burden of proof.

84

" 'Let it be assumed that, if all the creditors of this bankrupt knew that this sale was conditional, the petition below should prevail, it remains true that the trustee has the right of any creditor, and the burden is on the conditional vendor to prove no creditor was without notice. No effort was made to make this proof. ·

" 'The general rule, with copious citations, is given in Remington (3d Ed.) vol. 4, § 1578, to the effect that, where filing of conditional sale contracts is required by statute to preserve rights as against creditors, unfiled agreements are void against the trustee in bankruptcy, and In re Bazemore (D. C.) 189 F. 237, 239, is express authority for holding, as we do, that the burden of proof was on petitioner below to show notice.'

"In view of all the foregoing, I am of the opinion that the conclusions reached by the referee in this matter are correct, and should be affirmed, and that the method of sale and distribution set forth in his order of sale is in all respects warranted."

Again in the case of In re Supreme Furniture Co. (D. C.) 25 F.(2d) 488, 490, Judge Rellstab takes occasion to review many of the cases in the district upon the subject and makes the following comment upon the Golden Cruller & Doughnut Company Case:

"The case mainly relied on by the vendor under this heading is In re Golden Cruller & Doughnut Co. (D. C. N. J.) 6 F.(2d) 1015, 6 A. B. R. (N. S.) 639. In that case this court held that the unrecorded conditional sales agreement was valid as against the trustee. The ground for that decision was that, as there were no judgment or lien creditors, and as the schedules attached to the voluntary petition in bankruptcy disclosed the sales agreement, the trustee 'acquired no rights before having actual notice of the conditional sales contract.'

"The fact deemed controlling in that case is nonexistent in this. At the time of the filing of the petition in the Cruller & Doughnut Case, the bankruptcy law required that the schedules of a voluntary bankrupt's property be filed with his petition. By the amendatory act of May 27, 1926, 44 Stat. 663, 11 USCA § 25, a voluntary bankrupt has ten days (and such further time as might be granted), after filing his petition, to file a schedule of his assets, and the petitioner in the instant case availed itself of that privilege, and did not file its schedules of assets until two weeks after filing its petition to be adjudged a bankrupt.

"The notice relied upon in the present case is solely that given to the receiver immediately after his appointment. At that time the bankrupt's property already was in custodia legis. Notice given in such circumstances is not coincident with the taking of jurisdiction, and is not within the decision of the Golden Cruller & Doughnut Case or the reasoning that led to its pronouncement."

That the trustee has the status of a lien creditor has been established beyond any question or doubt. The only question here remaining is—Was this trustee, by reason of the fact that the bankrupt included in his schedule a notation as to the conditional contract of the vendor, placed in the status of a lien holder with notice within the provisions of the New Jersey Conditional Sales Act?

The notation in the schedule is set forth under the heading:

"Schedule A1. Statement of all Creditors who are to be Paid in Full, or to Whom Priority is Secured by Law."

Follows certain debts purporting to have priority and then:

"(4) Other debts having priority by law.

"Conditional Sales Agreement for following: * * * Ralston Scales Corp., Columbus, Ohio. $110.00."

As soon as there is an adjudication, title to the property of the bankrupt passes to the trustee as of the instant the petition was filed.

"The title and right to possession of all property owned and possessed by the bankrupt vests in the trustee as of the date of the filing of the petition in bankruptcy, no matter whether situated within or without the district in which the court sits." Isaacs v. Hobbs Tie & Timber Company, 282 U. S. 734 at page 737, 51 S. Ct. 270, 271, 75 L. Ed. 645.

For convenience it is quite customary, at least in this district, in voluntary applications in bankruptcy, for the petition to be accompanied by the bankrupt's schedules. However, under the Bankruptcy Act, the bankrupt is allowed to file his schedules within ten days after adjudication in involuntary proceedings and within ten days after the filing of the petition in voluntary proceedings. See Bankruptcy Act § 7 (8), 11 US CA § 25 (8). Whether the schedules are filed with the petition or thereafter, I am unwilling to hold that a notation contained in them concerning a conditional contract of sale constitutes such notice upon the trustee as is contemplated in the New Jersey Conditional Sales Act.

The purpose of the Conditional Sales Act is clear. The beams and girders of the great superstructure of this business world are constructed of · credit. Where such a huge portion of purchases of personal property is represented by installment and other deferred payment plans, it becomes increasingly necessary that machinery be set up to make definitely available to subsequent purchasers and creditors the definite status of title or lack of title in the possessor of the given article. So in this case a prospective purchaser or creditor walks into the grocery store of Miller. He observes the scales of the Ralston Corporation upon the counter and has a right to know whether Miller owns the property or not so as to guide his credit negotiations with him accordingly. To meet this situation the Legislature set up machinery in the nature of the Conditional Sales Act whereby it becomes necessary for a conditional vendor to protect his contractual reservation of title by making the contract public through the medium of recordation in the office of the county clerk. Unless this is done or unless the subsequent purchaser or creditor has actual notice of such reservation, his protection is lost. The adoption of this legislation is widespread throughout the country and has been for a number of years past. It is and should be common knowledge with firms dealing on credit, in accessories of the nature here in suit.

To hold that a notation on the bankrupt's schedules of the character herein noted served as a notice to the trustee, in view of his established status as a judgment creditor, is simply to defeat the purpose of the New Jersey Conditional Sales Act as well as section 47a of the Bankruptcy Law, as amended, and to this extent I cannot concur with the rationale of the decision in the Golden Cruller & Doughnut Company Case, supra.

I am, on the other hand, in agreement with District Judge Scott in his disapproval of the Golden Cruller & Doughnut Co. Case as contained in the case of In re Holley (D. C.) 25 F.(2d) 979 at page 980, wherein he says:

"The question now occurs: Did the filing of the schedules at the time of the filing of the voluntary petition so charge the trustee with notice as to be equivalent of the proper acknowledgment and filing for record of the instrument? Counsel for petitioner particularly rely on In re Golden Cruller & Doughnut Co., 6 F.(2d) 1015, District Court, District of New Jersey. This decision seems to present squarely the question, but upon care-ful consideration I am not disposed to follow it. Section 7 of the Bankruptcy Act, defining the duties of 'Bankrupts,' provides: '(8) Prepare, make oath to, and file in court within ten days after adjudication, if an involuntary bankrupt, and within ten days after the filing of the petition, if a voluntary bankrupt,' etc. 11 USCA § 25 (8). This section I think contemplates the filing of the schedules by one who has already filed his petition. The provision is, 'within ten days after the filing of a petition.' Section 47a, as amended by the act of 1910 (11 USCA § 75 (a), provides: 'And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon.'

"The property came into the custody of the bankruptcy court on the filing of the petition. The filing of the petition is a caveat to all the world, and in effect an attachment and injunction, Mueller v. Nugent, 184 U. S. 1, 14, 22 S. Ct. 269, 46 L. Ed. 405; and places the estate in custodia legis, Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208. I cannot accept the conclusion that it was the intention of Congress that a voluntary bankrupt, by merely truthfully scheduling a secured claim of this kind and filing the schedules with the petition, could dislodge the otherwise prior character of the trustee's title. This would put entirely within the power of the voluntary bankrupt the matter of the validity or invalidity of the lien under the contract of conditional sale. By filing the schedules with the petition he could make the contract good. By withholding them and filing the same the next day he could defeat it."

Proof is absent in this case that the trustee had any other actual notice except that contained in the schedules. In any event this notice itself was inadequate to inform the trustee of the reservation of title in the Ralston Corporation. It will be recalled that the language used in the schedule was peculiarly uninformative. It simply said, "Conditional Sales Agreement for the following: * * * Ralston Sales Corporation, Columbus, Ohio $110.00." This was not notice of a reservation of title as is required by the unequivocal wording of the New Jersey Act.

Definite support is given to this holding by the opinion of Mr. Justice Trenchard, speaking for a majority of the Court of Errors and Appeals of New Jersey in the recent case of Commercial Credit Corporation v.

Smith et al., 106 N. J. Law, page 94, at page 96, et seq., 148 A. 756, 72 A. L. R. 161, wherein he says:

"Neither the contract here in question nor a copy thereof was filed as required by the statute. Counsel for the plaintiff seeks to avoid that difficulty by saying that the defendant motors company, the judgment creditor, had knowledge of the existence of the contract, because its attorney and the constable were informed of its existence at the time the levy was made. But that is not enough. We do not stop to consider whether or not notice to the attorney or to the constable was notice to the judgment creditor. But we point out that there was no showing, or attempt to show, that the judgment creditor, or its attorney, or the constable, had knowledge of the provision in the conditional sales contract reserving property in the plaintiff and the right to elect that the whole purchase price shall be due on default in payment of any installment. Upon this topic we have nothing but the affidavits of Mr. and Mrs. Smith stating that they advised the attorney and constable that 'the motor vehicle was covered by an unsatisfied conditional sales contract held by plaintiff.'

"It is to be borne in mind that the statute makes every provision in a conditional sale reserving property in the seller void as to any judgment creditor of the buyer, who, without notice of such provision, acquires a lien upon the goods by virtue of a levy, unless such contract or a copy thereof is filed as required by the statute. And the rule is that, in the absence of such filing, in order to defeat the rights of such a judgment creditor under such a levy, he must be shown to have had knowledge or notice, not only of the existence of the contract, but of the provision thereof reserving property in the seller at the time the writ was executed. The mere fact of knowledge (if it be the fact) of the existence of a conditional sales contract, without more, does not import knowledge of the specific provisions contained in the contract. Of course, it is otherwise if the contract be filed, for then every creditor has constructive notice, not only of the contract filed, but also of its provisions." Citing Brown v. Christian, 97 N. J. Law, 56, 117 A. 294.

" * * * So far as the matter now under consideration is concerned, that rule was followed by this court in Morey & Co. v. Schaad, 98 N. J. Law, 799, 121 A. 622, 623, where Mr. Justice Minturn said:

" 'In construing a statute of this remedial character, we are guided by the obvious fundamental rule furnished by the purpose of the Legislature, which was to give notice to a bona fide purchaser or creditor of the exact legal status and property rights of the parties to the contract, so as to enable such intending purchaser or creditor to guide himself accordingly. Pursuant to the express language of the statute, this purpose may be accomplished, either by the imparting of actual notice to such parties, or by the filing of the contract itself within the 10 days prescribed by the act. Such we conceive was the interpretation given to the act in the opinion referred to (Brown v. Christian, 97 N. J. Law, 56, 117 A. 294), where Mr. Justice Bergen remarks: "It (the sale) is absolutely void as to any attaching creditor, unless he has notice of the bill of sale and of its provisions prior to the execution of the writ." ' [Citing Thayer Mer. Co. v. First National Bank of Milltown, 98 N. J. Law, 29, 119 A. 94, affirmed, 98 N. J. Law, 907, 121 A. 927, and quoting therefrom.]

"It will thus be seen that in this state the rule is firmly established that, in the absence of compliance with the provision of section 5 of the statute as to filing the contract, in order to defeat the rights of a judgment creditor of the buyer acquired by his levy, he must be shown to have had knowledge or notice, not only of the existence of the contract, but of the provision thereof reserving property in the seller and the right to elect that the whole purchase price shall be due on default in payment of any installment, at the time the writ was executed."

The order of the referee directing the delivery of the scale to the claimant, Ralston Scales Corporation, will accordingly be set aside.